The opinion of the Court .was delivered by
Wardlaw, J.
The case of the plaintiff rested mainly on a single witness, Stacey E. Black, and the defendants sought' *658 to overthrow her credit with the jury (it may be inferred ' successfully, although the result is not stated in the report) by strict cross-examination, by disproof of some of her statements of facts, and by the testimony of other witnesses, that, on a mistrial of the case formerly, and on other occasions, she had made contrarient statements; but they disclaimed all purpose to assail her general character, and on the offer of the plaintiff to support her reputation by testimony, expressly admitted that her general character was good, pure and spotless. The circuit Judge refused to hear testimony as-to her general good character, and the plaintiff appeals for supposed error of the Judge “ in refusing to admit evidence of the good character of the witness, Stacey E. Black, when she was attacked by proof of contradictory statements made in and out of Court.” The appeal hangs on the legal issue, whether or not, a witness or a party, in behalf of whom the testimony of a witness is offered, attacked by evidence of having made previous statements, really or seemingly in conflict with his deposition, is entitled of strict right to rebut the damaging presumption from such conflict, by evidence of fair reputation or character.
It might suffice for the determination of the particular case, to say that all the practical effect of the evidence proposed, had been fully attained by the concession of the adverse party; but we prefer to consider the general question without aid from such concession.
A judicious text writer, (Phillips’s Evid.) asserts on his own unsupported authority, the reasonableness of such general evidence, inasmuch as the adverse evidence puts the character of the witness in issue. Mr. Greenleaf, 1 Gr. Ev. 469, repeats this assertion, citing in support of it the Nisi Prius decision of Judge Holroyd in Rex vs. Clark, 2 Starkie’s R. 241. In our own case of Farr vs. Thompson, Cheves, 37, where a party had shown by the examination of his own witness, without objection from the other side, that the witness had previously *659 made statements inconsistent with his testimony, it was held, that neither the witness nor the adverse party could introduce in reply, evidence of the good character of the witness; and Judge Earle, in the course of the opinion, does say, that if the testimony of the witness had been thus impeached by the adverse party, the witness, or the party offering him, should be allowed to rebut the presumption against his credit by proof of his good character, founding himself on the case of Rex vs. Clark, supra. It will be found on examination of that case, that it does not support the proposition deduced from it. That was an indictment for an assault with intent to commit a rape, and the prosecutrix admitted in cross-examination, that she had been twice committed for offences to the House of Correction; and it was allowed in her behalf to offer evidence, that her conduct was good while in this state of confinement and probation. The evidence admitted, was not as to her general character, but as to her good conduct in a particular situation, in respect to the offences implied from her confession. There is a wide difference between character and conduct for a time, and one .equally wide between general character and proper credit on a special trial or occasion.
Nemo repente fuit turpissimus. A great crime perhaps with exception as to acts of violence, is not, according to common experience, the first instance of misconduct in any man. Moral principles are gradually sapped, and one may be fitted by imperceptible deterioration for any sort of the crimen falsi before any act has alarmed the community and affected his reputation. The greatest rogue, under circumstances supervised by his neighbors, may simulate the course of honesty.
One of good principles and the fairest reputation, may be utterly unworthy of credit in his statements of some transactions. Monomania is a state of mind universally recognized, and it may preclude one completely from the perception and *660 narration of the truth. Intense ignorance or superstition, or some affection, may produce the same consequences. The great improbability of a narrative may produce disbelief, without impairing the confidence of the hearers in the probity of the narrator. A wise and good man may fail in his remembrance of any fact, and especially of its attendant circumstances. Surely, then, character and credit are distinct things, and every assault on the credit of a witness does not involve the imputation of perjury to him, nor, indeed, any reflection on his reputation. -If a witness should contradict himself in the course of his testimony, it would not'be pretended that this would be a sufficient basis for evidence as to his good character ; and yet there is no difference, in principle, between 'his contradiction of himself on the stand' and 'outside of the court house. The consumption of the limited time which can be appropriated to the administration of justice and of the money of' parties and witnesses,'required by the-trial of collateral issues as to character, is a great and' growing mischief. In this very case, involving in pecuniary interest the value of a cotton screw and seven bags:of cotton, the judge reports that three days of a former session were occupied, with no other fruit than mistrial by cessation of the term, and that at the trial which resulted in a verdict, notwithstanding his ruling to exclude such evidence as to the principal witness of the plaintiff fifty-six witnesses were examined as to character. Great delay, expense, and exasperation necessarily follow such a course. : Instead of trying the issue in the action, the procedure, in many cases, is a trial of the witnesses,and every witness is expected to bring in his train a host of compurgators who will swear to their faith in him when he contradicts himself or is contradicted by .others. These collateral _ issues as to character are practically and sometimes justly applied not'only to the witnesses as to the facts in controversy, but’also as to the witnesses as to character themselves, and really are unlimited and illimitable. In *661 a large majority of cases these collateral investigations are altogether sterile, either because the testimony of the witness assailed is immaterial, or because the number is nearly equal of those attacking and those defending his character. It is frequently a mere contest as to the number of the compurgators and the villifiers, and in the muster the vicinage is canvassed and disquieted. In many cases, witnesses as to character have no character themselves, and in nine out of ten instances, they testify as to their impressions from the conduct of. him in question coming under their actual observation, without any conception that character depends on the belief of the larger part of those competent to form an opinion concerning the principles and reputation of an individual founded on his conduct — namely, the belief of the community, and not of the individual testifying. We disclaim, in right and fact, the clecision of points of law from mere considerations of policy and convenience; but in a matter of practice not settled, we may .weigh legitimately the interests of the people.
In Russell vs. Coffin, 8 Pick. 143, 154; Stamper vs. Griffin, 12 Geo. R. 450, 456, and Rogers vs. Moore, 10 Conn. R. 16, the opinions of Phillips and Greenleaf; are expressly.'repudiated; and I have simply amplified the reasoning” in these cases.
■ We are of opinion that character can be defended by evidence, only when it is directly assailed by evidence, i
Ordered, that the motion for new trial be dismissed.
O’Neall, O. J., and Johnstone, J., concurred.

Motion dismissed.